## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Lisa Baker et al.,

                Plaintiffs,

                            Case No. 1:21-cv-4186-MLB

v.

City of Atlanta et al.,

                Defendants.

_____/

## **OPINION & ORDER**

Nineteen people sued the City of Atlanta and a number of police officers who arrested them following a peaceful protest in early 2021. Defendants move to dismiss (Dkt. 37). The Court grants Defendants' motion in part and denies it in part.

## I.  **Background**

On January 6, 2021, a small group of people (in Atlanta) held a candlelight vigil to express their disagreement with a decision by officials (in Wisconsin) not to file criminal charges against a police officer (in Wisconsin) who shot a man named Jacob Blake (in Wisconsin). (Dkt. 35 ¶ 32.) Following the vigil, the group walked up a street in peaceful

protest.  (Dkt. 35 ¶ 33.)[1]  Within minutes, Atlanta police officers ordered them to disperse.  (Dkt. 35 ¶ 34.)  The group had nowhere to go because of buildings on "each side of the street."  (Dkt. 35 ¶ 34.)  Atlanta Police Captain Gary Harper ordered officers to arrest people walking up the street.  (Dkt. 35 ¶ 35.)  Defendant officers did that.  (Dkt. 35 ¶ 35.)  Except for a police car, there was no traffic in the streets, and all protestors were on the sidewalk at the time of their arrests.  (Dkt. 35 ¶¶ 34, 36.)  Police took everyone to the city jail and charged them with obstructing traffic.  (Dkt. 35 ¶ 37.)  The City of Atlanta later dismissed all charges.  (Dkt. 35 ¶¶ 38.)

Plaintiffs (nineteen people who were arrested that day) sued the arresting officers for unlawful seizure in violation of the Fourth Amendment, malicious prosecution in violation of the Fourth

---

[1] There is some dispute as to whether Plaintiffs' statement in the second amended complaint that Plaintiffs marched "up the street," (Dkt. 35 ¶ 34), concedes that Plaintiffs were all walking in the street rather than on the sidewalk. (Dkt. 38-1 at 3–4.) Considering the Court's duty to draw inferences in Plaintiffs' favor, Plaintiffs' allegation that all protestors were arrested on the sidewalk (Dkt. 35 ¶ 36), and Plaintiffs' clarification that their reference to "street" was meant to indicate people were walking up a roadway (without distinguishing between the street and the sidewalk) (Dkt. 38-1 at 3–4), the Court will not assume the protestors were improperly in the street at the time of their arrests.

Amendment, malicious prosecution in violation of O.C.G.A. § 51-7-40, and retaliation in violation of the First Amendment. (Dkt. 35.) Sixteen of the Plaintiffs also sued the City of Atlanta to hold it accountable for the officers' actions. (Dkt. 35 ¶¶ 49–59.) Defendants moved to dismiss. (Dkt. 37.)

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiffs' well-pled allegations must "nudge[] [their] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.   Discussion

### A.   Municipal Claims

Though combined in one count, Plaintiffs assert two arguments for municipal liability: a state-law claim under respondeat superior and a

Case 1:21-cv-04186-MLB   Document 43   Filed 03/20/23   Page 4 of 33

*Monell* claim under 42 U.S.C. § 1983 for failure to train.  (Dkt. 35 ¶¶ 49–59.)

## 1.    Respondeat Superior

Plaintiffs argue the City of Atlanta's indemnification of its police department constitutes a limited waiver of sovereign immunity, so the City may be sued for the officers' violations of state law pursuant to respondeat superior.  (Dkt. 35 ¶¶ 51–52; 55.)  The City does not move to dismiss or otherwise respond to this argument.  So, to the extent Plaintiffs allege municipal liability under state law, that claim may go forward.[2]

---

[2] Generally, "[a] municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."  OCGA § 36-33-3; *McDay v. City of Atlanta*, 420 S.E.2d 75, 77 (Ga. Ct. App. 1992).  At the same time, "[w]hen a city purchases liability insurance, it waives immunity 'to the extent of [such] liability coverage."  *Gilbert v. Richardson*, 452 S.E.2d 476, 482 (Ga. 1994).  And "[t]he interaction between the governmental immunity granted by [§ 36-33-3] and the waiver of immunity in [§ 36-33-1(a)] has been subject to surprisingly little litigation."  *Stefani v. City of Grovetown*, 2016 WL 4611575, at *10–11 (S.D. Ga. Sept. 2, 2016).  "Yet the few courts that have considered this issue have all declined to find that § 36-33-3 protects municipalities from suit irrespective of their sovereign immunity. Instead, they have treated § 36-33-3 as exclusively part of sovereign immunity such that the purchase of liability insurance eliminates protection from suit."  *Brienza v. City of Peachtree City*, 2021 WL 2930096, at *2 (N.D. Ga. June 8, 2021), *aff'd sub nom. Brienza v. City of Peachtree City, Georgia*, 2022 WL 3841095 (11th Cir. Aug. 30, 2022).  But

4

### 2. *Monell* Liability

A municipality may be held liable for a police officer's actions that violate a person's constitutional rights when one of the city's official policies causes the constitutional violation. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694–95 (1978). A plaintiff seeking to hold a municipality liable under § 1983, therefore, must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). A plaintiff may allege a policy by showing that (1) the municipality's legislative body enacted an official policy on point, (2) final policymakers for the municipality "have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure," or (3) someone with final policymaking authority adopts or ratifies the unconstitutional act or decision of a subordinate. *Rogers v. City of Atlanta*, 214 F. Supp. 3d 1314, 1317 (N.D. Ga. 2016).

Plaintiffs argue the City is liable under *Monell* because it "has a long history of not adequately training its officers when it comes to

---

as Defendants do not move to dismiss this claim, the Court need not consider the issue.

protecting citizens' First Amendment rights" and (alternatively) because Defendant officers arrested them "pursuant to direct instructions from a final policy maker," specifically, Captain Harper.  (Dkt. 35 ¶¶ 57–59.) Defendants moved to dismiss.  (Dkt. 37.)

### a)  Failure to Train

"[T]he Supreme Court has explained that there are only limited circumstances in which an allegation of a failure to train or supervise can be the basis for liability under § 1983."  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  These "limited circumstances" occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.  *Id.*  Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, a plaintiff may prove a city policy by showing the city's failure to train demonstrates "deliberate indifference" to its citizens' rights.  *Id.*  To establish such deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area

6

and the municipality made a deliberate choice not to take any action."
*Id.* at 1350–51.  The Eleventh Circuit "repeatedly has held that without
notice of a need to train or supervise in a particular area, a municipality
is not liable as a matter of law for any failure to train and supervise."  *Id.*
And "[a] pattern of similar constitutional violations by untrained
employees is ordinarily necessary to demonstrate deliberate indifference
for purposes of failure to train."  *Weiland v. Palm Beach Cnty. Sheriff's
Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015).

Plaintiffs offer two allegations in support of their negligent training
claim.  First, they reference a 2015 contempt order that arose from
officers' actions in "violating citizens' rights to film the police."  (Dkt. 35
¶ 57.)  Second, they reference a May 2022 incident in which police
allegedly arrested peaceful protestors in a public park.  (Dkt. 35 ¶ 57.)
These allegations are insufficient to state a *Monell* claim based on
negligent training.

Plaintiffs plead no details of the 2015 contempt order and thus fail
to plausibly allege that incident establishes the City knew of a need to
train officers how they should deal with protestors like Plaintiffs, that
the City ignored that need, or that the contempt order otherwise

demonstrates a deliberate indifference to Plaintiffs' rights.  To remedy this lack of detail, Plaintiffs identify the case that led to the contempt order in their response to Defendants' motion to dismiss and ask the Court to take judicial notice of that order and the underlying dispute. (Dkt. 38-1 at 9.)  "[C]ourts may take judicial notice of public records, such as a pleading filed in another [case], because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016).  But "[j]udicial notice may be taken only to establish what those documents contain, not the veracity of their contents." *Id.*  That makes sense here because, while the City entered into a settlement agreement in the prior matter, it did not concede the veracity of the underlying allegations.

But, even if appropriate, judicial notice of the contempt order and underlying civil action would not help Plaintiffs.  That case (identified by Plaintiffs as *Anderson v. City of Atlanta,* Case No. 1:11-cv-3398) involved police officers' alleged repeated violations of citizens' right to record police officers who are making arrests or are otherwise engaged in their official duties. (*Anderson v. City of Atlanta,* Case No. 1:11-cv-3398, Dkt. 1 ¶¶ 8–

10, 26–30.)  It had nothing to do with how police officers treat citizens walking along a street in peaceful protest.  That both the prior incident and this case involve citizens exercising their First Amendment rights is not sufficient to transfer the need for training in one specific area (a citizen's right to film police) to the need for training in a distinct area (a citizen's right to peacefully protest).  As a result, Plaintiffs have not plausibly alleged a causal connection between the alleged deficient training at issue in *Anderson* and the violations alleged here.  *See Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) ("[I]nherent in the principle that a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.") (internal quotation marks, brackets, and citations omitted); *see also Connick v. Thompson*, 563 U.S. 51, 62–63 (2011) (holding that four reversals based on *Brady* violations within one prosecutor's office did not provide notice that *Brady* training was deficient because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or

physical or scientific evidence of any kind," so those incidents were "not similar to the violation at issue").

In addition, the City settled that case and agreed to revise the police department's standard operating procedures to, among other things, expressly prohibit police from interfering with a citizen's right to record police activity. (*Anderson v. City of Atlanta,* Case No. 1:11-cv-3398, Dkt. 16.)   It also agreed to provide repetitive training about the new procedures. (*Id.*)  In 2015, the *Anderson* court held the City in contempt of its order because the City had not done what it was required to do. (*Anderson v. City of Atlanta,* Case No. 1:11-cv-3398, Dkt. 31 at 13).  But the contempt order and other filings show the City revised its SOPs as required and provided the necessary training sometime in 2015. (*Anderson,* Case No. 1:11-cv-3398, Dkt. 31 at 13; Dkts 33–35.)  So, even if the contempt order showed the City knew at one time that it needed to better train its officers, the other filings show the City satisfied that need. This also means Plaintiffs' allegations do not plausibly allege a causal connection between the alleged deficient training in 2015 and the violations alleged here. *See generally Fabian v. City of New York*, 2018 WL 2138619, at *9 (S.D.N.Y. May 9, 2018) (report citing forceful police

encounters between 2010 and 2014 did not support *Monell* claim for 2015 incident when the report describes a training program implemented prior to 2015 incident).

And finally, a *single* contempt order issued five years before the event at issue in this case is not enough (or recent enough) to have put the City on notice of a need to train its officers on how to deal with peaceful protestors. *See Thomas v. City of Jacksonville,* 2015 WL 13284967, at *28 (M.D. Fla. Feb. 17, 2015) (citing *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("A single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.")); *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 423 (M.D. Pa. 2014) ("[A]llegations of a single three year old lawsuit involving other actors [is] insufficient to place these policymakers on notice[.]").

Plaintiffs' allegation that the 2022 incident provides evidence of a relevant need to train fares no better. That incident occurred more than one year *after* Plaintiffs' arrests and prosecutions. So, it could not have

placed the Atlanta Police Department on notice of any need to train at the time of Plaintiffs' arrests.  *See generally Hines v. Jefferson*, 338 F. Supp. 3d 1288, 1307 (N.D. Ga. 2018) (plaintiff may show deliberate indifference by submitting "evidence of a history of widespread *prior* abuse by . . . personnel that would have put the [defendant] on notice of the need for improved training or supervision") (emphasis added); *Thompson v. Sheriff, Pinellas Cnty. FL*, 542 F. App'x 826, 829 (11th Cir. 2013) ("We conclude that such post-incident complaints could not have put the Sheriff on notice of a need for supervision."); *Hall*, 43 F. Supp. 3d at 423 ("Conduct occurring after the underlying constitutional violation has ended does not support *Monell* liability.")  So, Plaintiff does not state a *Monell* claim under a negligent training theory.

### b)    Final Policy Maker

"The final policymaker theory of liability provides a method for establishing local governmental liability where an individual vested with ultimate, non-reviewable decision-making authority for the challenged action or policy has approved or implemented the unconstitutional action at issue." *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1124 (N.D. Ga. 2016) (citing *Scala v. Winter Park*, 116 F.3d 1396, 1398–1403

(11th Cir. 1997)).  "To determine if someone is a final policy maker, [courts] look not only to state and local positive law, but also custom and usage having the force of law." *Id.* (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004)).  Whether an employee has final policymaking authority is an issue of law for a court to decide. *See Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1221 (S.D. Fla. 2007) (whether employee has final policymaking authority is a question of law for the judge to decide).

Plaintiffs allege Captain Harper was a final policymaker, so his order to arrest Plaintiffs results in municipal liability.  (Dkt. 35 ¶ 59.) Plaintiff cites no authority for this.  On the other hand, Atlanta Code of Ordinances § 98-26 states that the Chief of Police "shall have the authority to promulgate departmental rules and regulations that are consistent with the terms or intent of the laws and ordinances relating to the department."  So, the ordinance gives the Chief of Police final policymaking authority.  In the light of the City's decision to vest this authority elsewhere, the Court concludes Plaintiffs' bare allegation that Captain Harper was a final policymaker merely "by virtue of his rank" does not plausibly allege that authority.  (Dkt. 35 ¶ 59.)  *See McMillian*

*v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996) ("[W]e may not assume that final policymaking authority lies in some entity other than that in which state law places it.  To the contrary, we must respect state and local law's allocation of policymaking authority.").

Another court has already addressed a similar issue.  In *Toole v. City of Atlanta*, a plaintiff sued the City of Atlanta after police officers arrested him during a protest.  2019 WL 13021157, at *2 (N.D. Ga. Mar. 26, 2019).   The plaintiff argued a police deputy chief had final policymaking authority about whether to make arrests.  *Id*. at *10.  The court noted the police department's policy manual "states the Chief of Police is the chief executive officer of the Department and has the sole authority to manage, direct, and control the operations and administration of the Department."  *Id*. at *10 (internal quotation marks omitted).  So, the Court concluded a deputy chief (the third highest rank in the department) did not have final decision-making authority.  *Id*.  That decision supports this Court's conclusion that a captain (who has a lower rank than a deputy chief) similarly does not have that authority.

The Court concludes Plaintiffs fail to state a *Monell* claim for municipal liability.

14

### B.   Individual § 1983 Claims

Plaintiffs allege the individual officers arrested them without arguable probable cause in violation of the Fourth Amendment, arrested them in retaliation for their protest in violation of the First Amendment, and maliciously prosecuted them in violation of the Fourth Amendment. (Dkt. 35.)   Defendants argue the officers are entitled to qualified immunity.  (Dkt. 37-1 at 17–21.)  The Court disagrees.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  So, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  When properly applied, qualified immunity thus "protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 1240, 1254

n.19 (11th Cir. 2010).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2022).  The Defendant officers acted within the scope of their discretionary authority when arresting Plaintiffs.  *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect).  So, Plaintiffs have the burden of showing qualified immunity is unavailable to the officers.

The qualified immunity analysis presents two questions: first, whether the allegations, taken as true, establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established, [the court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [the court is] permitted to do so."  *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

16

### 1.   Fourth Amendment Unlawful Arrest

### a)   Constitutional Violation

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007). An arrest is a seizure of the person, and the "reasonableness" of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest. *Id.* "The existence of probable cause is an absolute bar to a claim of unlawful arrest under . . . the Fourth or First Amendment." *Ruch v. McKenzie*, 2019 WL 1407012, at \*5 (N.D. Ga. Mar. 28, 2019) (citing *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.")). "An officer has probable cause to arrest if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Ruch*, 2019 WL 1407012, at \*6 (citing *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016)). Importantly, the test for qualified immunity is not whether the officer *actually* had

probable cause to support the arrest, but rather whether the officer *arguably* had probable cause: "Even without actual probable cause, . . . a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." *Id.* Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Id.*; *see also Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013) ("[A]n arrest may be for a different crime from the one for which probable cause actually exists, . . . but arguable probable cause to arrest for some offense must exist in order for officers to assert qualified immunity from suit.").

Here, Defendants argue the officers are entitled to qualified immunity on all individual § 1983 claims because the officers had probable cause to arrest Plaintiffs for obstructing traffic pursuant to Atlanta Ordinance § 150-266. That ordinance states "[n]o person shall stand or be in any street in such manner as to obstruct or impede the normal and reasonable movement of traffic." (Dkt. 37-1 at 15, 18.) But Plaintiffs' allegations, accepted as true, do not support even arguable probable cause to believe Plaintiffs violated that ordinance. The

complaint alleges all Plaintiffs were on the sidewalk at the time of their arrests. (Dkt. 35 ¶ 36.) At least one of the Plaintiffs, Shaheen Rana, never left the sidewalk. (Dkt. 35 ¶ 36.) While it is possible other Plaintiffs were in the street at some point prior their arrests, the complaint does not say so. The complaint also alleges "[a]t all times relevant to th[e] complaint, the street was devoid of any vehicular traffic." (Dkt. 35 at ¶ 34.)[3] So, Plaintiffs have alleged they did not obstruct or impede the normal and reasonable movement of traffic. (Dkt. 35 ¶¶ 33–36.) Finally, Plaintiffs allege the protest was peaceful and the police did not give them time (or an opportunity) to disperse before arresting them. The facts allege the lack of probable cause or even arguable probable cause for Plaintiffs' arrest, and thus allege a violation of Plaintiffs' Fourth Amendment rights.

---

[3] Plaintiffs concede there could have been a police vehicle on the street or parked on a side street. (Dkt. 35 at ¶ 34.) But in the light of Plaintiffs' straightforward claim that the street was "devoid of any vehicular traffic," the Court does not read this reference to the police vehicle as a concession Plaintiffs obstructed or impeded traffic so as to provide even arguable probable cause for their arrests.

### b) "Clearly Established Law"

A constitutional right is clearly established for qualified immunity purposes only if "every reasonable official would have understood that what he [or she] is doing violates that right." *Ruch*, 2019 WL 1407012, at *4 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Put differently, "existing precedent must have placed the statutory or constitutional question beyond debate" to give the official fair warning that his or her conduct violated the law. *Id.* (citing *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)).

A plaintiff typically shows a defendant's conduct violated clearly established law by pointing to "materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Id.* at *5. While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin*, 642 F.3d at 1013. Fair warning can also arise from two other sources. First, "[a]uthoritative judicial decisions may 'establish broad principles of law' that are clearly applicable to the conduct at issue." *Gates v. Khokar*, 884 F.3d 1290, 1296 (11th Cir. 2018). Second, "it may be obvious from 'explicit statutory or constitutional statements'

that conduct is unconstitutional." *Id.*   Regardless of the method, the preexisting law must "make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

"The second qualified immunity inquiry is, in the context of this case, straightforward: [Eleventh Circuit] binding precedent clearly established, at the time of [Plaintiffs'] arrests, that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."   *Skop*, 485 F. 3d at 1143; *Davis v. Williams*, 451 F.3d 759, 764 n. 8 (11th Cir. 2006) ("There is no question that the second step—clearly established—is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998).   Because Plaintiffs have shown, at least based on the allegations in the complaint, the officers did not possess arguable probable cause to arrest them, and because it was clearly established at the time that an arrest without probable cause violates the Constitution, Plaintiffs' Fourth Amendment false arrest claim may proceed.

## 2.   First Amendment Retaliation

Plaintiffs also argue they were arrested in retaliation for exercising their First Amendment rights.  (Dkt. 35 ¶¶ 65–76.)  Defendants move to dismiss because there was probable cause that Plaintiffs were obstructing traffic.  (Dkt. 37 at 17—20.)  True, probable cause defeats a First Amendment claim for retaliatory arrest.  *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) ("Whatever the officers' motivation, however, the existence of probable cause to arrest Dahl defeats her First Amendment claim.").  But the Court has already determined that, based on the allegations in the complaint, there was not even arguable probable cause for Plaintiffs' arrests.  And Defendants do not offer any other grounds for dismissing Plaintiffs' First Amendment claims.  So, they may proceed.[4]

---

[4] Though Plaintiffs bear the burden in a qualified immunity analysis, the Eleventh Circuit has held that—even in the qualified immunity context—defendants must "specifically and clearly" present their theories of qualified immunity to the district court.  *See WBY, Inc. v. DeKalb Cnty., Ga.*, 695 F. App'x 486, 491–92 (11th Cir. 2017).  As Defendants do not address the merits of Plaintiffs' First Amendment claim, the Court will not do so either.

### 3. Fourth Amendment Malicious Prosecution

#### a) Constitutional Violation

The Eleventh Circuit has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983. *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003). To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his or her Fourth Amendment rights in addition to the elements of the common law tort of malicious prosecution. *Id.*

#### (1) Fourth Amendment Violation

In a malicious prosecution claim, Plaintiffs must allege they were seized in relation to the commencement of a judicial proceeding. *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1349 (S.D. Fla. 2011) (citing *Kingsland v. City of Miami,* 382 F.3d 1220, 1235 (11th Cir. 2004)). And "[i]n the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Id.* Indeed, "[t]he plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." *Id.*

*Blackshear* is on all fours with this case.   In *Blackshear*, the plaintiff was arrested without a warrant or probable cause.   *Id.* at 1347. The plaintiff was detained, released on bond, and brought to court before the charges were dismissed.   *Id.* at 1343.   At some unspecified time *after* the plaintiff's arrest, the officer submitted an allegedly false police report to the prosecutor.   *Id.* at 1349.   The Court found the plaintiff had stated a Fourth Amendment violation sufficient for a malicious prosecution claim.   *Id.*   Similarly, Plaintiffs here allege the officers not only initiated their prosecutions by falsely arresting them, but also "caused the prosecutions to continue" based on their false arrest affidavits and police reports.   (Dkt. 35 ¶ 44.)   "It is unclear from the [complaint] at what point the officers allegedly delivered false police reports to the prosecutor and exactly what false police reports [and affidavits] were given."   *Blackshear*, 799 F. Supp. 2d at 1349.   "However, supplying false information in arrest affidavits violates the Fourth Amendment and can provide the basis for a § 1983 claim."   *Id.* (citing *Jones v. Cannon*, 174 F.3d 1271, 1284–85 (11th Cir.1999)).   The Court thus finds Plaintiffs have alleged facts that, at this stage of the litigation, establish they were seized "in relation to the prosecution, in violation of [their] constitutional rights."   *Id.*

There is one exception.  Plaintiffs allege Defendant Harper only ordered the Defendant officers to arrest them.  (Dkt. 35 at ¶ 44.) Plaintiffs do not allege Defendant Harper did anything more to cause their prosecutions to continue.  So, Plaintiffs have not stated a Fourth Amendment malicious prosecution claim against Defendant Harper.

### (2)   Elements of Malicious Prosecution

To establish malicious prosecution, a plaintiff must show (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.[5] *Id.*

---

[5] "[A] Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law. . . . So, although courts historically have looked to the common law for guidance as to the constituent elements of the claim, . . . [w]hen malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." *Blue v. Lopez*, 901 F.3d 1352, 1358 (11th Cir. 2018) (internal citations and quotation marks omitted).

### i.   Malice

Defendants contest only the probable cause and malice elements of Plaintiffs' malicious prosecution claim.  As the Court has already ruled against Defendants on the former, it need only address the latter.  The question is whether Plaintiffs have sufficiently alleged malice.  "[M]alice, for purposes of a malicious prosecution action, may be inferred from want of probable cause." *Brown v. Benefield*, 757 F. Supp. 2d 1165, 1181 (M.D. Ala. 2010).  While the inference of malice may be rebutted by showing that the officers acted in good faith, the Court—at the motion to dismiss stage—is bound by the pleadings.  *Id.*

Plaintiffs' allegation that the prosecution was commenced absent probable cause "allows the court to draw the reasonable inference that the prosecution was malicious and as a result that the officers [except Defendant Harper] are liable for the misconduct alleged." *Id.; see also Phillips v. City of W. Palm Beach,* 2018 WL 3586179, at *8 (S.D. Fla. July 26, 2018) ("Malice can thus be inferred from a lack of probable cause, gross negligence, or great indifference to persons, property or the rights of others.")  Plaintiffs also allege the officers knew there was no probable cause and made statements that were "knowingly false or made with

26

reckless disregard for the truth." (Dkt. 35 ¶¶ 45–46.) Both the lack of probable cause and the alleged knowledge, at this stage, suffice to allege malicious prosecution. *Id.*

### ii.   Legal Cause

Though not raised by Defendants, the Court finds that all elements of malicious prosecution are met. The entry of nolle prosequi constitutes termination in Plaintiffs' favor. *See Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216 (N.D. Ala. 2012). And as Plaintiffs allege a constitutional violation, they also sufficiently allege damage. *Williams v. Aguirre*, 965 F.3d 1147, 1161 (11th Cir. 2020) (holding, in context of malicious prosecution, "a plaintiff's inability to prove actual damages is not determinative of whether he can state a claim for a constitutional violation"). And though less straightforward, Plaintiffs have alleged the officers were the legal cause of the prosecutions, as required for malicious prosecution.

The Eleventh Circuit has held defendant police officers are not the legal cause of a prosecution "where there was no evidence that they had anything to do with the decision to prosecute or that they had 'improperly influenced' that decision." *Williams v. Miami-Dade Police Dep't*, 297 F.

App'x 941, 947 (11th Cir. 2008) (quoting *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir.1994)). "The intervening acts of the prosecutor, grand jury, judge and jury—assuming that these court officials acted without malice that caused them to abuse their powers—each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen." *Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989). "However, legal cause is established where the malicious prosecution claim is based upon officers fabricating false and misleading evidence that is eventually presented to a prosecutor, in turn, influencing the decision to prosecute the accused." *Phillips*, 2018 WL 3586179, at *6.

Here, Plaintiffs allege the officers' false arrest affidavits and police reports caused prosecutions to be initiated and continued, and that the officers "persisted in initiating, participating in, and assisting" with the prosecutions. (Dkt. 35 ¶¶ 44–45.) They also allege the prosecutions were based upon the officers' statements. (Dkt. 35 ¶ 46.) At the pleading stage, this is sufficient to state the officers' misconduct was the legal cause of Plaintiffs' prosecutions. *See Williams*, 297 F. App'x at 947 (finding legal cause where plaintiff's malicious prosecution claim is based

on officer's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and misleading evidence).   So, Plaintiffs have stated a claim for malicious prosecution.[6]

### b)   "Clearly Established Law"

Per Plaintiffs' allegations, the officers knew there was no probable cause to support Plaintiffs' arrests and prosecutions.  (Dkt. 35 ¶ 45.) Despite this, the officers gave false statements, affidavits, and police reports to initiate and support the prosecutions.  (Dkt. 35 ¶¶ 44–46.) The unconstitutionality of such conduct was well established as of January 6,

---

[6] This conclusion is also consistent with the Eleventh Circuit's recent decision in *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020).   In respect to the difference between false arrest and malicious prosecution, *Williams* affirmed that "[a]lthough the lawfulness of a warrantless arrest turns on whether the arresting officer had probable cause, the lawfulness of seizures pursuant to legal process turns on the validity of the legal process itself." *Id.* at 1162.  In this case, Plaintiff's false arrest is based upon the alleged *arrest* without probable cause whereas the malicious prosecution claim is based on the later decision to *prosecute* without probable cause based on the officers' allegedly false affidavits.  In respect to establishing that the legal process *was* constitutionally infirm, the *Williams* court held the plaintiffs could show that "an official, including an individual who did not [initiate the prosecution], intentionally or recklessly made misstatements or omissions necessary to support the [prosecution]." *Id.* at 1165 (11th Cir. 2020).   This is precisely what Plaintiffs allege here.   If discovery reveals otherwise, the Court will revisit the issue.   But at this stage, the Court accepts Plaintiffs' allegations as true.

2021. *See Eloy v. Guillot*, 289 F. App'x 339, 347 (11th Cir. 2008) ("Under [plaintiff's] version of the facts, [officer] knew that there was not even arguable probable cause to arrest [plaintiff], but intentionally lied in the arrest affidavits and fabricated evidence in order to effect [plaintiff's] arrests and prosecution anyway."); *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th 1999) ("[T]he law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause."). So, the Defendant officers—other than Captain Harper—are not entitled to qualified immunity on Plaintiffs' § 1983 malicious prosecution claims.

## C.   State Law Malicious Prosecution

The Defendant officers argue they are entitled to official immunity on Plaintiffs' state law malicious prosecution claim. Under Georgia's doctrine of official immunity, state public officials are not personally liable for discretionary acts performed within the scope of their official authority. *Holmes v. Bivins*, 2019 WL 4024802, at *3–4 (N.D. Ga. Aug. 27, 2019) (citing *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001)).

Public officials do not enjoy official immunity under Georgia law, however, when "they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX(d); *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007). "Actual malice . . . denotes express malice, i.e., a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others." *Id.* (citing *Murphy*, 647 S.E.2d at 60). "Under Georgia law, the record may support an inference of actual malice where evidence indicates that the police officer arrested the plaintiff despite having knowledge that the plaintiff did not commit the crime for which he was arrested." *Id.* at *4. "However, the mere lack of probable cause does not permit an inference of actual malice." *Id.* (citing *Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002)).[7]

---

[7] In their defense of the state-law malicious prosecution claim, Plaintiffs conflate the "malice" required to show malicious prosecution and the "actual malice" required to defeat official immunity. These are two different concepts subject to different standards. *See Schultz v. Lowe*, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022) ("'Malice is an element of malicious prosecution and may be inferred by a total lack of probable cause. Our initial inquiry, however, is not whether [the officer] acted maliciously for purposes of the tort of malicious prosecution, but whether [he or she] acted with actual malice that would exempt [him or her] from official immunity.'").

The officers here were acting within their discretion and, therefore, are immune from suit unless they acted with actual malice.  *See Lagroon v. Lawson*, 759 S.E.2d 878, 882–83 (Ga. Ct. App. 2014).  Here, Plaintiffs allege the officers initiated and supported a prosecution despite knowing there was no probable cause.  (Dkt. 35 ¶¶ 44–46.)  This allegation supports a deliberate intent to commit a wrongful act and thus actual malice.  *See City of Atlanta v. Shavers*, 756 S.E.2d 204, 207 (Ga. Ct. App. 2014) (finding evidence of a wrongful act, and thus actual malice, where officer proceeded in his arrest of plaintiff despite knowledge that there was no probable cause for such arrest).  So, the Defendant officers are not entitled to official immunity.

## IV.  Conclusion

The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion to Dismiss (Dkt. 37).  The Court dismisses both *Monell* claims contained in Count III (municipal liability).  The Court also dismisses Count II (malicious prosecution in violation of the Fourth Amendment) as to Defendant Harper only.  The Court allows Count I (unlawful seizure in violation of the Fourth Amendment), Count IV (state-law malicious prosecution) and Count V (First Amendment retaliation) to proceed in

their entirety.  The Court allows Count II (malicious prosecution in violation of the Fourth Amendment) to proceed as to all Defendant officers except Defendant Harper.  The Court allows Count III (municipal liability) to proceed under a state-law theory of respondeat superior only.

**SO ORDERED** this 20th day of March, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE