IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LISA BAKER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:21-CV-04186-MLB |
| AMANDA WORTHAM, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT GARY HARPER</u>

Deputy Chief Gary Harper (ret.) is entitled to judgment as a matter of law on all claims brought by Plaintiffs related to their arrests on the evening of January 6, 2021, at the end of a rally and march by a small group of protestors seeking to show support over the failure to prosecute the police officer who shot and injured Jacob Brooks in Kenosha, Wisconsin. The District Attorney for that city had announced during the day that no charges would be brought against the officer involved in the shooting.

Plaintiffs' evidence fails to show the existence of a constitutional violation in their arrests. Not only can Plaintiffs not show a constitutional violation from their arrests, but Harper is also entitled to qualified immunity because the law was not sufficiently clearly established that he should have known that what he was doing in

the circumstances he confronted that evening violated anyone's constitutional rights. He had at least arguable probable cause to support his communications with his team on the ground that Plaintiffs were subject to arrest for violation of City of Atlanta Ordinances. Deputy Chief Harper is entitled to judgment as a matter of law and his motion should be granted.

## STATEMENT OF RELEVANT FACTS

On the evening of January 6, 2021, a candlelight vigil was held at the entrance of Centennial Olympic Park in Atlanta. Dkt. 35, Second Consolidated Amended Complaint ("2d Amended Complaint"), p. 16, ¶ 32; Plaintiffs' Exhibit 1 at ICS 201, page 1. The gathering was organized as part of the national "Solidarity with Kenosha" movement, following the police shooting of Jacob Blake. Plaintiffs' Exhibit 1 at ICS 201, page 1. Although initially peaceful, the event transitioned into a protest march around 9:00 p.m., when participants moved from the park into public streets, including Centennial Olympic Park Drive and Andrew Young International Boulevard. Dkt. 35, 2d Amended Complaint at p. 17 ¶ 33.

The Atlanta Police Department ("APD"), having received prior intelligence suggesting potential unrest and associations with groups such as ANTIFA and the Atlanta Justice Alliance, had prepared an Incident Action Plan in accordance with standard operating procedures. Plaintiffs' Exhibit 1 at ICS 201, p. 1. Then-

Lieutenant Gary Harper (now retired Deputy Chief) led the Special Operations unit in preparing the plan for response to the planned protest. Harper depo. at p. 13, l. 24 to p. 14, l. 9). Standard procedure within APD required the activation of the the Joint Operations Center at police headquarters to maintain command and control. Plaintiff's Exhibit 1 at ICS 201, p. 3).

When the protestors' march turned up Andrew Young International, Lt. Harper issued a dispersal order via a public address system, warning participants that remaining in the street constituted obstruction of traffic under City Ordinance Section 150-266.  Harper Body Worn Camera ("BWC") at time stamp 21:04:42 to 21:05:20. This warning was given prior to the group entering the intersection of Andrew Young Boulevard and Ted Turner Boulevard. Pritchard BWC at time stamp 21:05:30-21:06:12; Ward BWC at time stamp 21:05:45 – 21:06:15. Despite the order, members of the group proceeded into the intersection, with some crossing against traffic signals and impeding traffic. Pritchard BWC at time stamp 21:05:42-21:06:09; Ward BWC at time stamp 21:05:45 – 21:06:15.

Subsequently, a rock was thrown at Lt. Harper's police vehicle. Harper BWC at 21:05:28 (where Harper communicates via radio that a rock was thrown at his vehicle). This incident prompted radio communications among officers, culminating in a directive to proceed with arrests. Harper BWC at 21:05:47. Captain Jessica Bruce, the senior officer on scene, confirmed the decision to take enforcement

3

action. Harper BWC at 21:05:58. Harper also made sure the Joint Operations Center was aware of the tactical situation. Harper BWC at 21:06:04.

The officers on site had been advised of the dispersal order, the group's presence in the street, and the act of violence against law enforcement. Harper BWC at 21:08:14. The Parties have stipulated that Harper personally observed each participant in the protest in the street prior to and following the dispersal order. Stipulated Statement of Material Facts 27; Harper Deposition at p. 131 l.17 to l. 24. Relying on both personal observations and the collective knowledge communicated by Lt. Harper, officers arrested several individuals, including plaintiffs Lisa Baker, Timothy Buford, Jessica Eichler, and others. Dkt. 35, 2d Amended Complaint, generally. Harper was not personally involved in the arrest of any Plaintiff. *Id*., Stipulated Statement of Material Facts at 26.

The plaintiffs were arrested pursuant to City of Atlanta Code section 150-266, obstruction of a roadway, based on their presence in the street following a dispersal order and their continued involvement in the demonstration. Some plaintiffs reported minor physical injuries or emotional distress; others reported no injuries or declined medical or psychological treatment. These arrests, made in a context of heightened public safety concerns, are at the center of the present litigation.

The incident underscores the complexities of protest management in a post-2020 climate. It highlights the balance law enforcement must strike between

4

respecting First Amendment rights and ensuring public safety. When protesters demonstrate that they want to inflict harm on police or on property, the right to protest must yield to protection of the physical safety of others and the protection of property. This is such a case.

Plaintiffs amended complaint only asserts false arrest claims against Deputy Chief Harper. There is no allegation he was in a position to address or intervene in any of the tactics used by officers to effect the arrests based on probable cause. Thus, the entire case against Deputy Chief Harper rises or falls on the presence of probable cause to arrest the protesters for obstructing traffic in violation of City of Atlanta Code of Ordinances § 150-266 even though they were engaged in First Amendment activity.

ARGUMENT AND CITATION OF AUTHORITY

As mentioned above, Deputy Chief Harper is entitled to judgment as a matter of law. There is no evidence he committed or directed others to commit any violation of any Plaintiffs' constitutional rights. Not only is there no evidence to support a violation of a constitutional right, but the law was also not so clearly established that a person in Deputy Chief Harper's position knew, or should have known, that what he was doing in the circumstances violated clearly established law. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *Christmas v. Harris County, Georgia*, 51 F.4th 1348, 1354 (11th Cir. 2022).

Plaintiffs' Second Amended Consolidated Complaint makes 4 claims against the Officers, including Harper: Count I Alleges False Arrest under the United States Constitution; Count II, Alleged Malicious Prosecution under the United States Constitution but was dismissed by the Court, Dkt. 43, p.32; Count IV asserts a claim under state law for malicious prosecution; and Count V makes a claim for First Amendment Retaliatory Arrest under the United States Constitution.[1] The absence of probable cause is a common element to all 3 surviving claims. If probable cause is present, none of the claims survive. *Nieves v. Bartlett*, 587 U.S. 391 (2019) (presence of probable cause defeats retaliatory arrest claim as a matter of law, Count V); *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2019) (probable cause to arrest bars a false arrest claim under the Fourth Amendment, Count I); *Wal-Mart Stores, Inc. v. Blackford*, 264 Ga. 612, 613 (1994) (gravamen of a complaint for state law malicious prosecution claim is absence of probable cause, Count IV); *K-Mart Corp. v. Coker*, 261 Ga. 745, 746 (1991) (same); *Trident Wholesale, Inc. v. Brown*, 370 Ga. App. 505, 509, 897 S.E.2d 610, 614 (2024) (same). If probable cause is present on the facts known to the officers, each of the substantive claims fail. In addition, the defense of qualified immunity for the federal claims and official immunity for the

---

[1] Count III states a claim for municipal liability which is no longer present in the case because the municipal liability claims have been dismissed by the Court. Dkt. 43, pp. 3-14.

state law claim apply to defeat any claims of individual liability against Deputy Chief Harper.

This brief will discuss the presence of probable cause based on the record facts and its application to these claims. It will then discuss Deputy Chief Harper's qualified immunity from liability before turning to his official immunity under state law. Under any theory of the case, this motion should be granted and judgment entered for Deputy Chief Harper.

> I.    *No Constitutional Violation occurred when Plaintiffs were arrested at the end of their rally because the arrests were supported by probable cause.*

Summary judgment is appropriate where no constitutional violation has occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the evidence adduced by Plaintiffs does not establish a constitutional violation, there is no need for further inquiry. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Here, the question is whether there was probable cause for the warrantless arrests of Plaintiffs. *Nieves v. Bartlett*, 587 U.S. 391, 401-02, 408 (2019) (absence or presence of probable cause speaks to the reasonableness of the arrest and provides weighty evidence of the officer's motivation in making the arrest). Probable cause exists "'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to

believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)). Probable cause is not a high bar and requires only a probability that criminal activity has occurred. *Wesby*, 583 U.S. at 57. There is no requirement that the belief in the existence of probable cause establish guilt beyond a reasonable doubt and officers are not required to examine all possible defenses to the conduct alleged. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Locke v. United States*, 7 Cranch 339, 348 (1813). All that is necessary is that the officer possess a reasonable belief an offense has occurred based on the totality of the circumstances. *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019).

    A. <u>The undisputed presence of probable cause that an offense had occurred bars all of Plaintiffs' claims</u>.

Gary Harper personally observed each member of the group walking in the roadway up Andrew Young International Boulevard and moving toward Ted Turner Drive prior to communicating that fact to the other officers on scene. Harper BWC at 21:05:47. City of Atlanta Ordinance § 150-266 (Dkt. 174, p.3 Certified copy of Ordinance 150-266) makes it an offense to stand or walk in the street in such a manner that they obstruct or impede the movement of traffic. City of Atlanta Ordinance § 150-166. What Deputy Chief Harper observed was a group of about 30

to 40 persons walking down the middle of a city street in the heart of the Hotel District, crossing streets against the light. Harper depo. at 131, l. 17 to l. 22; Harper BWC at 21:06:30 (radio traffic); Haper BWC at 21:08:14 (radio traffic); Joint Stipulated Statement of Facts at 19. Once a person, or a group of people take to the street without permits or permission of City officials to do so, that person has committed an offense under the Atlanta Code of Ordinances. (Former Atlanta Police Chief R. Bryant depo. Page 93, ll. 5-14). Additionally, from a police operational perspective, when one of the group throws an object at a police vehicle, that act escalates the seriousness of the situation. (R. Bryant depo., page 99, ll. 7-12).  The department had learned during the protests of 2020 following the murder of George Floyd that a single act of violence against police or property could quickly escalate and run out of control unless officers acted quickly to  end the threat by arresting the protestors.  (R. Bryant depo., page 100, ll. 4-13). On this evidence, Plaintiffs have failed to "plead and prove the absence of probable cause," to support their constitutional claims. *Hartmann v. Moore*, 547 U.S. 250, 263, 265-66 (2006); *Nieves*, 587 U.S. at 408. *Thompson*, 596 U.S. at 49 (presence of probable cause bars a claim for malicious prosecution under the Fourth Amendment); *Wesby*, 583 U.S. at 62 (probable cause to arrest bars a false arrest claim under the Fourth Amendment)

The presence (or absence) of probable cause to arrest goes to the heart of the each Constitutional claim because it provides a reason for the officer's decision or

9

action that is reasonable based on all of the circumstances faced by the officer. <u>See</u> *Nieves,* 587 U.S. at 403. The Court clearly concluded that absent proof that probable cause for the arrest did not exist, a retaliatory claim fails as a matter of law. 587 U.S. at 408. This is because the animus required to support the Constitutional claims must be the "but for" cause of the allegedly unlawful detention or prosecution. By crafting an objective reasonableness requirement on the officer's decision-making the Court avoided the difficult suggestion to "probe the officer's intent." 587 U.S. at 403. Plaintiffs make the same mistake in this Court: they seek to prove intent to retaliate without first negating the patent presence of probable cause for the arrests required by the Court in *Nieves*. *Id.*

Probable cause exists for the arrests of all Plaintiffs. They were observed by Harper to violate the City's ordinance. The presence of that probable negates, as a matter of law, any constitutional violation asserted by Plaintiffs. Summary Judgment on each of the claims is required and Deputy Chief Harper's motion should be granted.

    B.  <u>There is no evidence others not involved in protests had walked in the street at the intersection of Ted Turner Drive and Andrew Young International Boulevard and not been arrested.</u>

Plaintiffs' argument turns almost entirely on section II.D. of Chief Justice Roberts' opinion in *Nieves*. In that section, the Court offered a hypothetical situation

where an officer might have probable cause to arrest but ordinarily would exercise their discretion not to arrest the subject at that location. 587 U.S. at 406-407. However, in *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (2019), the United States Court of Appeals for the Eleventh Circuit described this discussion as dicta, as the caveat did not relate directly to the factual issues presented or form a basis for the issue decided in *Nieves* (namely that the presence of probable cause defeats a retaliatory arrest claim as a matter of law). 942 F.3d at 1296-97.

The protest plaintiffs were participating in began at the corner of Centennial Olympic Park near the McCormick and Schmick's restaurant. Dkt. 35, Second Consolidated Amended Complaint ("2d Amended Complaint"), p. 16, ¶ 32; Plaintiffs' Exhibit 1 at ICS 201, page 1. At some point, and no one can recall who suggested it, the group undertook to march down Centennial Olympic Park Drive (against the direction of traffic) toward the World of Coca-Cola and the Georgia Aquarium. Dkt. 35, 2d Amended Complaint at p. 17 ¶ 33 During this leg of the march, some of the group may have been on the sidewalks and others were in the street. As they arrived at Andrew Young International Boulevard, they turned right, up the hill, and most walked in the streets. As the group approached the intersection of Ted Turner Drive and Andrew Young International (Andrew Young International is a two-way street for vehicular traffic up to Carnegie Way (which runs southeast from Andrew Young toward Ted Turner) from Centennial Olympic Park Drive), they

11

were observed by Deputy Chief Harper to all be walking in the streets. Stipulated Statement of Material Facts 27; Harper Deposition at p. 131 l.17 to l. 24. The Group then crossed Ted Turner Drive as Deputy Chief Harper finished giving his dispersal warning, with the light green for traffic on Ted Turner, the entire group was observed by Deputy Chief Harper to be walking in the street, ignoring the traffic signal directing them to stop, and impeding traffic. *Id.*

Plaintiffs have made much in their complaint and in discovery about protests at the State capital in December 2020, and earlier in the day on January 6, at which protestors who supported President Trump gathered to protest the loss of the election and were not arrested when they crossed the street. Those situations are distinguishable on their facts and easily rejected as a proper comparison. Plaintiffs have offered no evidence APD was in command of the scene of the capital protests only that officers may have been present. See, e.g., Stipulated Statement of Material Facts ¶ 198. More importantly, the hypothetical offered by Chief Justice Roberts suggests that a person arrested for jaywalking while engaged in First Amendment protected speech may still have a viable claim, even if the officer has probable cause to make an arrest, if a plaintiff shows that other jaywalkers not engaged in First Amendment protected speech were not arrested at the same intersection. *Nieves*, 587 U.S. at 407. The Chief Justice's hypothetical does not discuss the treatment of jaywalkers at an entirely different location in a city being similarly situated with a

First Amendment actor who was arrested for jaywalking in a different part of a city. His example is quite specific and it is to be presumed he meant what he said. Even if the Court's dicta were to apply to this case, it offers Plaintiffs no safe harbor for their claims to reach a jury.

More importantly, this is not a situation where the group was entirely peaceful, in any case. One of the group, who was identified, arrested, and charged, (Plaintiffs' Exhibit 13 to Deposition of Deputy Chief Bruce) threw an object at Deputy Chief Harper's police vehicle. As former Police Chief Bryant testified, that act of violence against the police presence at the protest changed the character of the police response. (R. Bryant depo. at page 100, ll. 4-13). The City's experience in 2020 in which initially peaceful protests turned into violent conflagrations informed APD's response on January 6. More specifically, APD had learned that violence shown toward police is a precursor to more violence, and if offenses have been committed the offenders should be arrested. That is precisely what happened in this instance.

This is apparent from Deputy Chief Harper's actions after the group was taken into custody. In reviewing his body camera footage during his deposition he is seen walking up Andrew Young International Boulevard to Peachtree Street and looking up and down Peachtree to see if other groups were coming to assist or to join in with the proffered violence from the original rock thrower. (Harper depo. at p. 207, l. 17 to p. 209, l. 9; Harper BWC at 21:12:42.

13

There is no safe harbor or appropriate exception applicable to this record from the holding in *Nieves* that the presence of probable cause defeats a retaliatory arrest claim as a matter of law. The record is devoid of any applicable comparators who were involved in this protest, the protesters were admittedly in the street which Harper personally observed, Harper depo. at p. 131, l. 17 to l24 (Stipulated Statement of Material Fact No. 27), Captain (now Deputy Chief) Bruce corroborated the observation of a violation of Ordinance § 150-266 in her radio transmissions (Harper BWC at 21:05:58), and the group acted together with the person who threw the rock at Harper's vehicle. This record establishes probable cause for the arrests and prosecutions that occurred and summary judgment should be granted.

II.    *Not only have Plaintiffs failed to demonstrate the existence of a Constitutional Right that was infringed by their arrest, Deputy Chief Harper is also entitled to qualified immunity because, on January 6, 2021, he did not act in violation of clearly established law.*

As the Eleventh Circuit wrote nearly 20 years ago, "In all but exceptional cases, qualified immunity protects government officials performing discretionary functions from the burdens of civil trials and from liability." *McMillian v. Johnson*, 88 F.3d 1554, 1562 (11th Cir. 1996). The qualified immunity analysis involves 3 questions: (1) Was the public officer acting within their discretionary authority?  (2) Was a constitutional right infringed? And (3) Was the law clearly established on

14

January 6, 2021 that what Deputy Chief Harper observed and did violated clearly established law of which a reasonable officer should have know? *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (qualified immunity protects public officials acting in their discretionary authority); *Pearson v. Calahan*, 555 U.S. 223, 236 (2009) (Plaintiff's burden of proof to show qualified immunity does not apply and elements 2 and 3 can be taken in any order). Here it cannot be reasonably argued that the officers involved were not acting within their discretionary authority. Whether to arrest someone is inherently discretionary, as a matter of law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (2002) (arrest of driver for minor offense is discretionary act). Question 2 has been answered in the previous section of the brief. This section addresses question 3.

The United States Supreme Court has repeatedly held that "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). To be clearly established, "the contours of the must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "All but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Mullenix v. Luna*, 555 U.S. 7 (2015); *Johnson*

15

*v. City of Miami Beach*, 18 F.4th 1267 (11th Cir. 2021). Deputy Chief Harper is neither plainly incompetent nor did he knowingly violate the law.

Additionally, Harper had at least arguable probable cause such that his actions on the evening of January 6 were not clearly unlawful. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997); *Brown v. City of Huntsville,* 608 F.3d 724,734 (11th Cir. 2010).

> A.   The law was not clearly established that what Harper did, based on what he personally observed, constituted a violation of Plaintiffs' constitutional rights.

To be clearly established, then, the law or constitutional provision allegedly violated must be found in

> (1) case law with clearly indistinguishable facts that establish the constitutional right, (2) a broad statement of principle within the constitutional, statute, or case law that clearly establishes the right, and (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018) (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)). Furthermore, in this Circuit, clearly established law cannot be established by dicta alone. *Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996) ("Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law.").

16

The opinion of the United States Supreme Court in *Nieves* only establishes the law that the presence of probable cause for an arrest defeats a First Amendment retaliatory arrest claim as a matter of law. *Nieves*, 587 U.S. at 408. Neither the caveat in section II.D. of *Nieves*, *Id*. at 406-08, nor *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (on which Plaintiffs have hung much of their arguments to the Court in prior hearings), clearly establish the law as of January 6, 2021. *Gonzales* cannot clearly establish the law applicable to these events because it was not decided before the events in this case. *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011);[2] *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (to be clearly established prior case law from the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state must be materially similar to the facts in dispute). "A defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000); *Watkins v. Sullivan*, 2021 WL 3072400 (S.D. Fla. 2021) (applying *Maggio* outside the public employment context in which it was decided).

---

[2] The "obvious clarity" cases discussed in *Fils* apply to excessive force analysis and constitute a narrow exception to the requirement of clear and controlling case law.. By looking at the officer's conduct in effecting the arrest, the question in an "obvious clarity" case is whether the response is appropriate or clearly excessive, because a clearly excessive arrest response (utilizing pepper spray or releasing a canine on a submitting arrestee) is so far beyond the borders of acceptable force that qualified immunity cannot apply. *Vinyard v. Wilson*, 311 F.3d 1340, 1343-44 (11th Cir. 2002) (officer used pepper spray on handcuffed arrestee); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008), (officer punched arrestee in the stomach while arrestee was handcuffed and not resisting); *Priester v. City of Riviera Beach*, 208 F.3d 919, 923-24 (11th Cir. 2000) (released K9 on subject even though arrestee had complied with every command, was laying on the ground, and was being arrested for minor, non-violent offense). These principles have no place in the nuanced and difficult world of the intersection of policing and First Amendment activity.

17

Plaintiffs have previously argued to this Court (and are expected to argue in response to this motion) that the exception or "caveat" discussed by the Chief Justice in section II.D. of the *Nieves* opinion provides them a window of liability for this dispute. *Nieves*, 587 U.S. at 406-07. Their position assumes too much. In *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019) (decided after *Nieves* and before these events), the Court of Appeals described the discussion in this section of the opinion in *Nieves* as dicta. 942 F.3d at 1296-97. As the Court said,

> Although probable cause defeated plaintiff Bartlett's retaliatory arrest claim, the Supreme Court issued a caveat, <u>albeit in dicta</u>, about that holding. The Supreme Court explained that, although probable cause generally defeats a retaliatory arrest claim, "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.

*Id*. (emphasis added). The Eleventh Circuit noted nearly 30 years ago that "Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law." *Hamilton v. Cannon*, 80 F.3d at 1530 (11th Cir. 1996). Thus, the caveat (as understood and read by the Eleventh Circuit in 2019) upon which Plaintiffs place so much hope cannot establish the law for this case because no reasonable officer would have understood that what they were doing violated statements that were not directly related to how and why a prior case was decided. The Courts do not ask police officers to lawyer and judges in determining whether probable cause exists or not nor in applying the subtleties of the First Amendment. *Davis v. Scherer*, 468 U.S. 183, 196 n.13 (1984). But, that is precisely what Plaintiffs

18

would have the Court do here—treat Deputy Chief Harper as though he is a judge of the District Court or a Justice of the United States Supreme Court and determine on his own whether the dicta of a prior case of the Supreme Court establishes the law or not. No such leap in logic is appropriate.

Even if the caveat did establish the law in 2021, it cannot assist Plaintiffs. In their Second Amended Complaint, Plaintiffs point to a protest that occurred during the daytime at the State capital. Dkt. 35, Amended Complaint at ¶ 72. However, the example chosen by Chief Justice Roberts requires significantly more specific evidence than that. In his example of a possible exception to the probable-cause-is-an-absolute-bar-to-a-retaliatory-arrest rule, the Chief Justice posits that

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Nieves*, 587 U.S. at 407. Thus, in the example offered by the Chief Justice, the comparators for purposes of squeezing into the exception the Court carves out is arrests for jaywalking in the precise intersection where the protester was arrested, not any or every intersection in the City. Plaintiffs have adduced no evidence concerning arrests or events of violation of City Ordinance 150-266 at the intersection of Ted Turner Drive and Andrew Young International Boulevard. There is nothing in their operative complaint, in their Mandatory Disclosures under Rule

26, or in responses to discovery that provides this necessary information. Thus, even if the caveat discussed in the *Nieves* opinion is somehow more than dicta, it accomplishes nothing on this record because Plaintiffs have not produced evidence that fits within the extraordinarily narrow confines of the caveat they seek to apply.

> B.    Not only was the law not clearly established that what Deputy Chief Harper did in 2021 violated the law, his conduct was supported by at least arguable probable cause that an offense had occurred, thereby entitling him to qualified immunity.

Arguable probable cause is all that is necessary for qualified immunity to protect a public officer from civil damages on these claims. *Hunter*, 502 U.S. at 228; *Montoute*, 114 F.3d at 184; *Brown,* 608 F.3d at734. For arguable probable cause to exist the evidence need only show that a reasonable officer, in defendant's place, would have concluded based on the available evidence that an offense had occurred. *Brown*, 608 F.3d at 735. What Deputy Chief Harper understood in that moment was that each and every member of the group was observed walking in the street and obstructing traffic on Ted Turner Drive. The group crossed the intersection even though traffic on Ted Turner had the green light and the light facing traffic on Andrew Young International Boulevard was red commanding that traffic stop and yield the right of way to traffic on Ted Turner. Those facts establish the offense chargeable under the City ordinance and state law provided the authority to arrest

20

for that offense. O.C.G.A. § 17-4-20; *Atwater v. City of Lago Vista*, 532 U.S. 318, 355 (2001) (listing statutes from all 50 states, including Georgia, that authorize arrests for minor offenses).

Arguable probable cause exists on this record establishing that Deputy Chief Harper is protected by qualified immunity. His motion should be granted.

III. *Deputy Chief Harper is entitled to official immunity from any claim under state law and the court need not decline Supplemental Jurisdiction in this instance.*

Plaintiffs also raise a state law claim for malicious prosecution against the officers. Dkt. 35, pp. 26-27, Count IV (¶¶ 60 to 64). That claim is in the case based on this Court's supplemental jurisdiction to hear matters inextricably intertwined with other claims over which the Court has original authority. 28 U.S.C. § 1367. The Court need not dismiss that claim on this record. *Palmer v. Hospital Auth. Of Randolf County*, 22 F.3d 1559 (11th Cir. 1994).

That is because the grant of Deputy Chief Harper's motion under either Section I or Section II above also decides Plaintiffs' state law claim. As noted above, the presence of probable cause, as argued in Section I, is fatal to the malicious prosecution claim made by Plaintiffs against Harper. *Blackford*, 264 Ga. at 613 (gravamen of a complaint for state law malicious prosecution claim is absence of probable cause); *Coker*, 261 Ga. at 746 (same); *Trident Wholesale*, 370 Ga. App. at

21

509, 897 S.E.2d at 614 (2024) (same). Similarly, the Court's finding that qualified immunity bars Plaintiffs' claims is preclusive of any argument on the state law claims. *Draper v. Reynolds*, 278 Ga. App. 401, 404 629 S.E.2d 476 (2006).

Not only is the Court's grant of Deputy Chief Harper's motion on the federal claims raised by Plaintiffs preclusive of any state law claim, but he is also nonetheless entitled to state law official immunity. Official immunity, a Georgia version of qualified immunity, applies to protect public officials from liability when acting in their discretionary capacities without malice. *Cameron v. Lang*, 274 Ga. 122, 123 (2001). A waiver of immunity under Georgia law requires a showing of the specific intent to cause harm to the plaintiff. *Merrow v. Hawkins*, 266 Ga. 390, 391 (1996) (actual malice is more than implied malice or reckless disregard for the rights of others). There is no evidence from which a reasonable juror could conclude Plaintiff harbored actual individual malice toward any Plaintiff. Plaintiffs' own allegations are stated only in the collective, general applicability toward the group and is not capable of individualized application to any particular plaintiff. Additionally, all that is required is probable cause for the arrest, even if that determination is later determined to be mistaken. *Mercado v. Swoope*, 340 Ga. App. 647, 651, 798 S.E.2d 291, 294 (2017). There is no basis for any argument probable cause did not exist to arrest Plaintiffs for the offense under the City Code of

22

obstructing traffic. Summary judgment on this claim is appropriate and the motion should be granted.

CONCLUSION

Gary Harper is entitled to judgment as a matter of law on this record and the applicable law. Plaintiffs' arrests did not violate the law because they were arrested based on the existence of probable cause. Deputy Chief Harper personally observed the group, who were largely dressed alike and without any confusion because of bystanders or others in the area, walking in the street on Andrew Young International Boulevard as they approached the intersection with Ted Turner Drive. Stipulated Material Facts at ¶ This personal and direct observation

This 14th day of July, 2024.

                                        /s/ Christopher D. Balch
                                        Christopher D. Balch
                                        Georgia State Bar No. 034015

**BALCH LAW GROUP**
830 Glenwood Ave., SE
Suite 510-220
Atlanta, GA 30316
chris@balchlawgroup.com
404/202-5934

## <u>CERTIFICATE OF TYPE FACE COMPLIANCE</u>

In accordance with Local Rules 5.1(C) and 7.1(D), the undersigned certifies that the within and foregoing document was prepared utilizing Microsoft Word in Times New Roman 14 point type.

This 14th day of July, 2025.

*/s/ Christopher D. Balch*
Christopher D. Balch
Georgia State Bar No. 034015

**BALCH LAW GROUP**
830 Glenwood Ave., SE
Suite 510-220
Atlanta, GA 30316
chris@balchlawgroup.com
404/202-5934

## CERTIFICATE OF SERVICE

I hereby certify that the within and foregoing document was served upon all counsel of record through the Court's ECF/CM system to the email addresses of record for each counsel as follows:

Drego Cepar, Jr.
1900 The Exchange
Suite 490
Atlanta, GA 30339
770/940-3233
dcepar@gmail.com

David Ware
Phil Friduss
Hall Booth Smith
191 Peachtree Street
Suite 2900
Atlanta, GA 30303
404/
dware@hallboothsmith.com
pfriduss@hallboothsmith.com

Thomas M. Mitchell
Carothers & Mitchell, LLC
1809 Buford Highway
Buford, GA 30518
770/932-3552
Thomas.mitchell@carmitch.com

Karen Woodward
Cruser, Mitchell Novitz Sanchez
    Gaston & Zimet LLP
Meridian II
275 Scientific Drive
Suite 2000
Norcross, GA 30092

This 14th day of July, 2025.

/s/ Christopher D. Balch
Christopher D. Balch
Georgia Bar No. 034015

Balch Law Group
830 Glenwood Ave., SE
Suite 510-220
Atlanta, GA 30316
404/202-5934
chris@balchlawgroup.com

25